# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JUSTINE LARISON | : | CIVIL ACTION |
|---|---|---|
| v. | : | NO. 16-5921 |
| FEDEX CORPORATE SERVICES, INC. *et al.* | : | |

**KEARNEY, J.**                                                                                                       **June 9, 2017**

## MEMORANDUM

Employers should similarly evaluate performance of their salespersons trained and expected to perform at identical levels regardless of their age. When an employer holds its sales team to the same performance standards but then fires an older salesperson outperforming a younger and less experienced salesperson and replaces the older salesperson with a much younger salesperson, the employer should explain its legitimate business reasons for firing the older salesperson to the jury. While we do not find partial statistics on the "age of hires" or anonymous complaints about the supervisor's age bias does not show pretext, the fired salesperson adduces sufficient evidence of disputed facts as to whether the employer's business reasons to fire her are pretext for age discrimination when it fires older salespersons outperforming younger salespersons based on identical standards and replaces the older employee with a younger one. In the accompanying Order, we deny the employer's motion for summary judgment on the employee's age discrimination claim and will allow the jury to resolve these genuine issues of material fact surrounding the firing of an older salesperson who outperformed a younger salesperson who remained employed.

## I. Facts in the light most favorable to Ms. Larison.[1]

Justine Larison began working for Fedex Corporate Services, Inc. in 1994.[2] After holding many positions, she began working as a Sales Account Executive in March 2007.[3] In September 2012, District Sales Manager Stephanie Nardiello, eleven years younger than Ms. Larison, began supervising her.[4] In both 2014 and 2015, Ms. Nardiello requested permission to end Ms. Larison's employment.[5] Although human resources denied Ms. Nardiello's first request, it granted her second request, resulting in Ms. Larison's discharge in July 2015 at the age of 45.[6] Ms. Larison alleges her former employer discriminated against her based on Ms. Nardiello's 2015 request to discharge her resulting in her discharge.

### A. Ms. Larison's job duties.

As a Sales Account Executive, Ms. Larison's job duties included bringing in new business.[7] Account Executives like Ms. Larison needed to close about 10 to 12 accounts per year to be "at plan."[8] Account Executives were also expected to close large accounts, which are referred to as "Field-sized" accounts, but FedEx did not require sales employees to close a specific number of such accounts.[9]

### B. Ms. Larison's performance reviews consistently note deficiencies in closing new business.

Before Ms. Larison began working under Ms. Nardiello, Ms. Larison enjoyed positive or neutral performance reviews overall from her supervisors James Davis and John Reardon, but they found deficiencies in the area of closing new business.[10] In fiscal year 2010, Mr. Davis rated Ms. Larison's overall performance as "Generally Acceptable," but he rated her as "Below Expectations" in the area of "Activation and Implementation," which is an assessment category related to an employee's ability to close new business.[11] In 2011 and 2012, respectively, Mr. Reardon rated her overall performance as "Generally Acceptable" and "Good Solid," but rated

2

her as "Met Some Expectations" in the area of "Activation and Implementation."[12]

After Ms. Nardiello began supervising Ms. Larison, she noted deficiencies in Ms. Larison's ability to close new accounts, but otherwise rated her positively or neutrally. In 2013 and June 2014, Ms. Nardiello rated Ms. Larison's overall performance as "Generally Acceptable," but rated her as "Met Some Expectations" in the area of "New Business Development and Implementation."[13] Ms. Larison closed only one "field-sized" account in fiscal year 2013, and again only one in fiscal year 2014.[14]

From 2013 through 2015, Ms. Nardiello consistently told Ms. Larison she needed to focus on closing new business accounts.[15] For example, in March 2014, Ms. Nardiello counseled Ms. Larison about her "lack of new business activation," describing only three accounts with verified new revenue since June 2012.[16] Ms. Nardiello told Ms. Larison her activity "is unacceptable and needs to improve," advised Ms. Larison her progress would be reviewed after 60 days, requested a detailed course of action on acquiring new business, and scheduled weekly meetings to discuss progress and assistance.[17]

### C. Ms. Nardiello asks permission to end Ms. Larison's employment in August 2014.

On August 1, 2014, less than two months after Ms. Nardiello rated Ms. Larison's overall performance as "Generally Acceptable," Ms. Nardiello asked human resources if she could discharge Ms. Larison.[18] Three days later, Human Resources Advisor James Wallace denied Ms. Nardiello's request because of her recent "Generally Acceptable" rating.[19] Mr. Wallace instead recommended providing Ms. Larison with a warning letter.[20]

Ms. Nardiello then issued Ms. Larison a warning letter regarding her deficiency in closing new business, stating Ms. Larison had only closed one "Field-sized" account in fiscal year 2014.[21] Ms. Nardiello warned Ms. Larison her employment could be terminated if her

3

performance did not improve.[22] Ms. Nardiello again informed Ms. Larison her progress would be reviewed in 60 days and they would have weekly meetings to review her activity.[23] Ms. Larison testified the warning letter contained inaccuracies, but she does not identify what the inaccuracies constituted.[24]

Fifteen days after issuing the warning letter, Ms. Nardiello asked Mr. Wallace in an email if she could cancel the weekly meetings because Ms. Larison had been complaining about them.[25] At the end of the email, Ms. Nardiello added, "I plan on pursuing this at the end of her second warning letter on Sept 29th."[26] Mr. Wallace understood Ms. Nardiello's reference to "this" as her request to terminate Ms. Larison.[27] In other words, Mr. Wallace believed Ms. Nardiello planned on pursuing a request for termination at the end of the sixty-day period, which fell on September 29, 2014.[28] Despite Ms. Nardiello's stated intent to pursue her request to terminate Ms. Nardiello at the end of the 60-day period, she did not do so.

### D. Ms. Nardiello issues another warning letter to Ms. Larison based on her sales performance.

On December 22, 2014, Ms. Nardiello issued Ms. Larison another warning letter, noting Ms. Larison had only closed two "Field sized" accounts for the first two quarters of fiscal year 2015.[29] Ms. Nardiello informed Ms. Larison her progress would be reviewed in 60 days and they would have weekly meetings to review her activity.[30] Ms. Nardiello again informed Ms. Larison her employment would be terminated if her performance did not improve.[31] Ms. Larison believed Ms. Nardiello issued all of the warning letters because of her age or gender.[32]

By the end of fiscal year 2015, Ms. Larison had closed five "field-sized" accounts—more than she had in any other fiscal year.[33] She lost one of these accounts in the fourth quarter of fiscal year 2015.[34] Despite Ms. Larison's improved performance, Ms. Nardiello rated Ms. Larison's overall performance in fiscal year 2015 as "poor."[35] Ms. Nardiello also found Ms.

4

Larison "Met Some Expectations" in the area of "New Business Development and Implementation."[36]

### E. Ms. Nardiello discharges Ms. Larison for poor performance, and replaces her with a younger employee.

On July 13, 2015, Ms. Nardiello requested permission from human resources to discharge Ms. Larison.[37] Ms. Nardiello explained Ms. Larison "has not brought on enough new, significant business" including "Field sized" sales.[38] Ms. Nardiello noted she made multiple attempts to improve Ms. Larison's performance, but she "has not activated enough significant revenue throughout the performance improvement plan process."[39]

FedEx fired Ms. Larison shortly after Ms. Nardiello's request. Ms. Nardiello hired thirty-eight-year-old Anthony Dell-Aquila to replace Ms. Larison.[40]

### F. Ms. Nardiello's hiring practices.

In hiring employees, FedEx uses a recruiting company to vet the top three candidates for a position.[41] The relevant management employees then review the candidates' resumes and interview the candidates.[42] After management interviews the three candidates, it makes a hiring decision.[43] FedEx interviews candidates of all ages.[44] Ms. Nardiello followed this procedure when hiring employees.[45]

When Ms. Nardiello became Sales Manager, the average age of the nine sales professionals who reported to her was 47.[46] Seven of these original employees no longer report to her, six of which were over the age of forty.[47] Ms. Nardiello hired nine employees while a Sales Manager, and all of these employees were under the age of forty at the time of hire.[48] After she discharged Ms. Larison, the average age of the sales employees reporting to Ms. Nardiello was 34.5.[49]

We do not know the ages of the candidates Ms. Nardiello interviewed but did not hire.

Although we have the resumes of three unhired individuals whom Ms. Nardiello interviewed, we lack facts as to the ages of these individuals and which of the nine positions Ms. Nardiello considered them for.[50]

### G. Anonymous complaints of age discrimination made against Ms. Nardiello.

After FedEx fired Ms. Larison, FedEx received three internal complaints of age discrimination against Ms. Nardiello from anonymous complainants.[51] These complainants contend Ms. Nardiello has an age bias because she harasses older workers until they leave FedEx, replaces older workers with younger workers, and "exhibit[s] age discrimination among her workers in the workplace."[52] As examples of harassment, one complainant states Ms. Nardiello puts older employees "on planners," gives them "bad sales territories," and does not give "guidance for how to turn things around.[53]

### H. FedEx did not discharge younger, less experienced sales employees with fewer closings.

At the time Ms. Nardiello discharged Ms. Larison, two younger, less experienced FedEx employees retained their employment despite closing fewer accounts. During his second year with FedEx, 34-year-old Account Executive Matthew Erb closed three accounts in fiscal year 2015.[54] Mr. Erb worked in a "Business Sales-Field" role, which Ms. Nardiello characterized as "one step lower" and "designed to be an entry into field sales."[55] Mr. Erb only recently moved into the territory.[56] Ms. Nardiello rated Mr. Erb more favorably than Ms. Larison in new business development even though he had fewer closings than her in fiscal year 2015.[57]

Steven Klein, a thirty-one-year-old Account Executive, closed three accounts in fiscal year 2015.[58] Mr. Klein's role is in market development, which is the same role Ms. Larison holds.[59] Mr. Klein started working for FedEx in July 2014, and at the time of Ms. Larison's discharge, he had worked at FedEx for only one year.[60] Ms. Nardiello rated Mr. Klein more

6

favorably than Ms. Larison in new business development even though he had fewer closings than her in fiscal year 2015.[61]

Ms. Nardiello attributes her disparate treatment of Mr. Erb and Mr. Klein to their lack of experience and their limited time in the new territory they worked in.[62] She explains if "you're fairly newer, you have a different set of what's success versus someone who has been doing this for years and years and knows what the expectations are and have been in the territory for a long time."[63] Ms. Larison "was doing it for a lot longer [than Mr. Erb or Mr. Klein], so the expectations are more advanced for someone who has been doing it for a long time."[64]

Despite Ms. Nardiello's explanation as to her disparate treatment, she unequivocally admits all sales employees are held to the same standards, including the same standard for closing business:

> Q. Was your entire sales team held to the same standard?
> A. Yes.
> Q. In regards to closing business?
> A. Yes.
> Q. So account executives and sales executives were held to the same standard for closing business?
> A. Yes. Sales executives and account executives, yes.[65]

## II. Analysis

Ms. Larison sued FedEx for age discrimination and retaliation under the Age Discrimination in Employment Act of 1967 ("ADEA")[66] and the Pennsylvania Human Relations Act ("PHRA").[67] Fedex moves for summary judgment, arguing Ms. Larison's age discrimination and retaliation claims fail as a matter of law.[68] FedEx contends Ms. Larison cannot establish a *prima facie* case of age discrimination and cannot demonstrate FedEx's reasons for discharging her are pretextual. Ms. Larison abandons her retaliation claim but argues genuine disputes of material fact preclude our entry of summary judgment on her age

7

discrimination claims.[69] We agree with Ms. Larison and deny summary judgment as to her ADEA and PHRA age discrimination claims, but we grant summary judgment as to her ADEA and PHRA retaliation claims.[70]

Under the familiar *McDonnell Douglas* framework, Ms. Larison must establish a *prima facie* case of age discrimination. If she does so, the burden shifts to FedEx to proffer evidence of legitimate non-discriminatory reasons for its adverse employment actions.[71] "'The defendant satisfies its burden at this step 'by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable action.'"[72] Once satisfied, Ms. Larison must then show, by a preponderance of the evidence, FedEx's explanation is "pretextual."[73] In other words, Ms. Larison must adduce evidence allowing a factfinder to disbelieve FedEx's reasons, or point to evidence allowing a factfinder to believe an invidious discriminatory reason more likely than not constituted a "motivating or determinative cause" of FedEx's conduct.[74]

### A. Ms. Larison addresses *prima facie* evidence of age discrimination.

Ms. Larison demonstrates a *prima facie* case of age discrimination. To establish a *prima facie* case of age discrimination, Ms. Larison must prove: (1) she is at least forty years old; (2) she suffered an adverse employment action; (3) she was qualified for the position in question; and (4) FedEx ultimately replaced her with a sufficiently younger employee, or the existence of facts allowing the inference FedEx relied on "impermissible factors."[75] FedEx argues Ms. Larison fails under the third and fourth elements because she cannot demonstrate she was qualified and cannot provide facts allowing the inference of age discrimination.

### i. Ms. Larison demonstrates she is qualified.

Ms. Larison provides sufficient evidence she was qualified to perform the work of an

8

Account Executive. Whether Ms. Larison is qualified "will turn on whether plaintiff is able to perform or has satisfactorily performed the job, an issue that entails a subjective evaluation to be evaluated by the factfinder."[76] We focus our inquiry on whether Ms. Larison satisfies the "bare minimum requirement necessary" to perform her job.[77] Our court of appeals instructs "the issue of basic qualification . . . will ordinarily be a question of fact."[78] Upon reviewing the record, we find a genuine issue of material fact as to whether Ms. Larison was qualified for the position she held, as she held the Account Executive position for over eight years and received overall performance ratings of "Generally Acceptable" in the four years leading up to her final, albeit negative, performance evaluation.

### ii. Ms. Larison satisfies the fourth element of her *prima facie* case.

Ms. Larison also demonstrates facts raising the inference of discrimination under the fourth element. Ms. Larison can satisfy this element by showing a "sufficiently younger" employee replaced her.[79] Our court of appeals instructs a five-year age difference between a plaintiff and her replacement can be sufficient to satisfy this requirement of a plaintiff's *prima facie* case.[80] Ms. Larrison's replacement—Mr. Dell-Aquila—is seven years younger than Ms. Larison. Ms. Larison satisfies the fourth element of her *prima facie* case.

### B. There is a genuine issue of material fact as to whether FedEx's decision to discharge her is pretextual.

Ms. Larison argues three bases for finding Ms. Nardiello's decision to discharge Ms. Larison: (1) a jury could disbelieve Ms. Nardiello's reasoning based on her demeanor at trial; (2) a jury could conclude Ms. Nardiello has an age bias based on her hiring decisions, her treatment of similarly-situated employees, and employee complaints of age discrimination; and (3) a jury could disbelieve Ms. Nardiello's explanation based on the inconsistent explanations FedEx provided for discharging Ms. Larison. After reviewing the first two bases, we find a genuine

9

issue of material fact as to pretext because there is sufficient evidence Ms. Nardiello treated a younger similarly-situated employee more favorably than Ms. Larison.

### i. Ms. Nardiello's prospective demeanor at trial does not create a genuine issue of material fact for trial.

Ms. Larison argues we should deny summary judgment simply because a jury, reviewing her demeanor on the stand, is entitled to disbelieve Ms. Nardiello's testimony she did not discriminate against Ms. Larison. In support, she cites Judge Schmehl's post-verdict decision denying a defendant's renewed motion for judgment as a matter of law.[81] Judge Schmehl found sufficient evidence for the jury to disbelieve a defense witness's contention she did not constitute the relevant decision maker.[82] Judge Schmehl recalled the witness's trial testimony as "extremely evasive and, at times, disingenuous," and explained, "Having witnessed [her] demeanor on the stand, the jury apparently did not credit [her] trial testimony that she was not the relevant decision maker."[83]

Ms. Larison provides no evidence of Ms. Nardiello's demeanor while testifying about her decision to discharge Ms. Larison. Absent such evidence, we would be speculating as to the jury's ability to disbelieve Ms. Nardiello based on her demeanor at trial. Judge Schmehl had the benefit of demeanor evidence when he made his post-trial decision, but we do not have such evidence before us. We refuse to find Ms. Nardiello's prospective demeanor at trial raises a genuine issue of material fact precluding summary judgment.

### ii. Evidence Ms. Nardiello acted with age bias.

Ms. Larison contends Ms. Nardiello's age bias is reflected by her hiring decisions, and discrimination complaints made against her by anonymous individuals, and her treatment of purported comparator employees. Although we find Ms. Nardiello's hiring decisions and the complaints lodged against her are not probative of age bias, we find sufficient evidence Ms.

10

Nardiello treated similarly-situated employees more favorably than Ms. Larison.

### 1. The purported statistical evidence of Ms. Nardiello's hiring decisions are not probative of her age bias.

Ms. Larison fails to demonstrate sufficient statistical evidence as to Ms. Nardiello's hiring practices which would allow the factfinder to infer she harbors an age bias. "Statistical evidence of an employer's pattern and practice with respect to minority employment may be relevant to a showing of pretext."[84] But raw numbers merely showing underrepresentation of a particular minority group is not probative of discriminatory motive.[85] For example, in *Ezold*, the plaintiff attempted to demonstrate pretext by showing the law firm she worked for had a disproportionately small number of women partners.[86] The plaintiff's "raw numerical comparisons, however, [were] not accompanied by any analysis of either the qualified applicant pool or the flow of qualified candidates over a relevant time period."[87] Our court of appeals refused to consider this evidence.[88]

Similarly, in *Narin v. Lower Merion School District*, our court of appeals found the district court acted within its discretion in excluding evidence of the ages of individuals hired in the school district over a ten-year period, as such evidence is not probative of discriminatory intent.[89] These "hiring lists," it explained, "simply show that Lower Merion hires young individuals—not that Lower Merion hires young individuals to the exclusion of older ones."[90] The hiring lists "could only be probative of discriminatory intent if, at the very least, it also were shown that roughly equivalent numbers of over-forty and under-forty individuals applied for employment" with the employer.[91]

Ms. Larison's evidence of Ms. Nardiello's hiring practices is not probative of her discriminatory intent. As in *Ezold*, Ms. Larison failed to put forward evidence of the ages of the candidates Ms. Nardiello considered. Although there is evidence FedEx interviews people of all

11

ages, we lack evidence demonstrating the ages of the individuals Ms. Nardiello interviewed.

Ms. Larison claims a jury could infer the ages of interviewees based on their resumes by viewing the years the applicants graduated from college or held jobs. Even if we accepted this argument, Ms. Larison provides the resumes of only three of the interviewees denied positions, even though Ms. Nardiello considered three individuals for each of the nine positions she filled. Further, Ms. Larison does not identify the individuals Ms. Nardiello hired to the exclusion of these three interviewees. We lack sufficient evidence of the ages of the qualified pool of interviewees Ms. Nardiello considered for these nine positions.

### 2. Ms. Larison's evidence of anonymous employee complaints of age discrimination against Ms. Nardiello does not demonstrate her age bias.

The anonymous complaints of age discrimination made by other employees against Ms. Nardiello do not demonstrate she harbors an age bias. Ms. Larison can demonstrate pretext by showing FedEx discriminates against other older workers.[92] It is well settled, however, an inference of discrimination "cannot arise simply from an employee's subjective belief that his or her [protected status] somehow influenced the challenged employment action."[93] Ms. Larison attempts to use anonymous employee complaints of age discrimination against Ms. Nardiello to prove she has an age bias. These anonymous complainants posit only conclusory allegations against Ms. Nardiello, claiming she replaces older workers with younger workers and harasses older workers until they leave or are fired. Although one complainant describes the purported harassment in more detail, stating Ms. Nardiello puts older employees "on planners," gives them "bad sales territories," and does not give them "guidance for how to turn things around,"[94] these instances of alleged harassment do not demonstrate age bias. We lack objective evidence demonstrating age bias motivated this purported harassment. These anonymous complainants'

12

mere subjective beliefs Ms. Nardiello discriminated or harassed employees on the basis of age does not raise a genuine issue of material fact as to whether Ms. Nardiello harbored an age bias toward Ms. Larison.

### 3. There is a genuine issue of material fact as to whether FedEx treated a similarly situated employee more favorably.

Ms. Larison provides sufficient evidence Ms. Nardiello treated similarly-situated employees more favorably. Ms. Larison can prove pretext by demonstrating FedEx treated a "similarly situated, substantially younger" employee more favorably.[95] For an employee to qualify as a similarly-situated comparator, the employee "must be similarly situated in all relevant respects."[96] Factors taken into account include whether the "employees dealt with the same supervisor [and] were subject to the same standards."[97]

An employee's experience can constitute a relevant factor in certain circumstances, and an employer is entitled to treat employees differently based on their experience levels. For example, the Court of Appeals for the Tenth Circuit held the employer could rightfully evaluate a senior-level employee "under standards higher than those applied to lower-level, younger" employees.[98] Similarly, the Court of Appeals for the Sixth Circuit held a purported comparator "cannot be considered similarly qualified" when the plaintiff "has superior experience."[99] Experience, however, may only come into play only if the employer took experience into account when making the employment decision.[100]

There is a genuine issue of material fact as to whether Mr. Nardiello treated two similarly-situated employees more favorably. Ms. Larison argues Ms. Nardiello inconsistently fired her for failing to close new business and did not fire younger sales employees—Mr. Erb and Mr. Klein—even though they closed fewer accounts than Ms. Larison in fiscal year 2015. Mr. Erb and Mr. Klein held the same position as Ms. Larison and reported to same supervisor,

13

Ms. Nardiello. Ms. Larison, however, had eight years of experience in sales, while Mr. Klein and Mr. Erb had only one and two years of experience, respectively. Even so, there is a genuine issue of material fact as to whether Ms. Nardiello held these younger, less experienced employees to the same standards as Ms. Larison. Although Ms. Nardiello testified she expected Ms. Larison to close more business than Mr. Erb or Mr. Klein because she had more experience than them, she also testified the "entire sales team" is "held to the same standard," even with regard to "closing business."[101] Ms. Nardiello's inconsistent testimony raises a genuine issue of material fact as to whether she held Ms. Larison to a higher standard than the younger, less experienced workers. This inconsistency is enough to demonstrate Ms. Nardiello treated her employees in a disparate fashion based on age.

## III. Conclusion

There are genuine issues of material fact as to whether Ms. Larison is qualified and whether Ms. Nardiello harbored an age bias based on her disparate treatment of sales employees. We grant FedEx's motion for summary judgment as to Ms. Larison's retaliation claims under the ADEA and PHRA, but deny FedEx's motion as to her ADEA and PHRA age discrimination claims.

---

[1] We consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to" Ms. Larison, "the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted). Our Policies require a Statement of Undisputed Material Facts be filed in support of a Rule 56 motion, as well as an appendix of exhibits. FedEx filed its Statement of Undisputed Facts at ECF Doc. No. 33. FedEx filed an appendix at ECF Doc. Nos. 34 through 39. Ms. Larison responded to FedEx's Statement of Undisputed Facts at ECF Doc. No. 41-5. Ms. Larison added documents to the Appendix at ECF Doc. Nos. 41-2 through 41-3. Ms. Larison also filed her own Statement of Undisputed Facts at ECF Doc. No. 41-4. FedEx responded to Ms. Larison's Statement of Undisputed Facts at ECF Doc. No. 43, and provided additional documents to the appendix at ECF Doc. No 42-1. References to the exhibits in the appendices shall be referred to by bates number, for example, "Appx. 1."

[2] ECF Doc. No. 43, ¶ 1.

³ *Id.* ¶¶ 3–4;

⁴ ECF Doc. No. 43, ¶ 5.

⁵ *Id.* ¶¶ 15, 26.

⁶ *Id.* ¶¶ 16, 37.

⁷ ECF Doc. No. 41-5, ¶ 9.

⁸ Appx. 206–07.

⁹ Appx. 224. A "Field-sized" account is an account generating revenue between $60,000 to $1.5 million. Appx. 223.

¹⁰ ECF Doc. No. 43, ¶ 8.

¹¹ *Id.* ¶ 10; Appx. 122, 305.

¹² ECF Doc. No. 43, ¶¶ 10–11; Appx. 129, 143.

¹³ ECF Doc. No. 43, ¶¶ 12–13; Appx. 152, 160.

¹⁴ Appx. 148; Appx. 156.

¹⁵ Appx. 148.

¹⁶ Appx. 171.

¹⁷ *Id.*

¹⁸ ECF Doc. No. 43, ¶ 15.

¹⁹ *Id.* ¶ 16.

²⁰ *Id.* ¶ 17.

²¹ Appx. 173.

²² *Id.*

²³ *Id.*

²⁴ Appx. 291.

[25] Appx. 337.

[26] *Id.*

[27] Appx. 332, at p. 101.

[28] *Id.*

[29] Appx. 174.

[30] *Id.*

[31] *Id.*

[32] Appx. 289.

[33] Appx. 62, 164.

[34] Appx. 164.

[35] Appx. 165, 169.

[36] Appx. 169.

[37] Appx. 339.

[38] Appx. 342.

[39] *Id.*

[40] ECF Doc. No. 41-5, ¶ 67; ECF Doc. No. 43, ¶ 46.

[41] Appx. 300, at p. 35.

[42] *Id.*

[43] Appx. 300, at pp. 35–36.

[44] Appx. 300, at p. 35.

[45] Appx. 300, at pp. 35–36.

[46] ECF Doc. No. 43, ¶ 50.

⁴⁷ ECF Doc. No. 43, ¶¶ 51–52.

⁴⁸ ECF Doc. No. 43, ¶ 58.

⁴⁹ ECF Doc. No. 43, ¶ 59.

⁵⁰ Appx. 420–27.

⁵¹ Appx. 406–414.

⁵² *Id.*

⁵³ Appx. 402.

⁵⁴ Appx. 375, 446.

⁵⁵ Appx. 185–86.

⁵⁶ Appx. 447.

⁵⁷ Appx. 348.

⁵⁸ Appx. 356, 376.

⁵⁹ Appx. 375–76.

⁶⁰ Appx. 376.

⁶¹ Appx. 356.

⁶² Appx. 447.

⁶³ *Id.*

⁶⁴ *Id.*

⁶⁵ Appx. 305, at p. 89.

⁶⁶ 29 U.S.C. § 621 *et seq.*

⁶⁷ 43 P. S. § 951 *et seq.*

⁶⁸ Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(a). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle*, 435 F.3d at 264 (citations omitted). If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that a genuine issue exists for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In other words, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. US. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citation and internal quotation marks omitted). Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

[69] ECF Doc. No. 41, at p. 3 n.1.

[70] "[T]he PHRA is to be interpreted as identical to federal antidiscrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 327 (3d Cir. 2015) (quoting *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002)). The parties do not point to specific language requiring different treatment.

[71] *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 271 (3d Cir. 2010) (citation omitted).

[72] *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994)).

[73] *Id.*

[74] *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644–645 (3d Cir. 2015) (quoting *Fuentes*, 32 F.3d at 764).

[75] *Id.* at 644 (citing *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) and *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999)).

[76] *Makky v. Chertoff*, 541 F.3d 205, 215 (3d Cir. 2008).

[77] *Id.*

[78] *Id.*

[79] *Willis*, 808 F.3d at 644.

[80] *Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 236 (3d Cir. 1999) (quoting *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995)).

[81] *Gerundo v. AT&T Servs.*, No. 14-5171, 2016 U.S. Dist. LEXIS 177583, at *11–12 (E.D. Pa. Dec. 20, 2016).

[82] *Id.*

[83] *Id.*

[84] *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 542 (3d Cir. 1992).

[85] *Id.* at 543.

[86] *Id.* at 542.

[87] *Id.* at 543.

[88] *Id.*

[89] *Narin v. Lower Merion Sch. Dist.*, 206 F.3d 323, 335 (3d Cir. 2000).

[90] *Id.*

[91] *Id.*

[92] *Willis*, 808 F.3d at 645.

[93] *Kier v. F. Lackland & Sons, LLC*, 72 F. Supp. 3d 597, 609 (E.D. Pa. 2014) (quoting *Howard v. Blalock Elec. Serv., Inc.*, 742 F. Supp. 2d 681, 702 (W.D. Pa. 2010)).

[94] Appx. 402.

[95] *Willis*, 808 F.3d at 645.

[96] *Wilcher v. Postmaster Gen.*, 441 Fed. App'x. 879, 882 (3d Cir. 2011) (citing *Russell v. Univ. of Toledo*, 537 F.3d 596 (6th Cir. 2008).

[97] *Parker v. Farley*, 625 Fed. App'x. 77, 82 (3d Cir. 2015) (quoting *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir.2000)).

[98] *Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 745 (10th Cir. 1991).

[99] *White v. Columbus Metro. Housing Auth.*, 429 F.3d 232, 244 (6th Cir. 2005).

[100] *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).

[101] Appx. 305, at p. 89.